IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN ASHER , et al. | ) | |
| | ) | Hon. Blanche M. Manning |
| Plaintiffs, | ) | |
| v. | ) | Case No.  02 C 5608, |
| | ) | |
| BAXTER INTERNATIONAL, INC., | ) | Magistrate Judge |
| et al. | ) | Arlander Keys |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed this proposed class action on behalf of shareholders who acquired stock in Defendant Baxter International, Inc. ("Baxter") between November 5, 2001 and July 17, 2002.  Plaintiffs allege that Baxter and several of its key executives made materially false or misleading public statements in violation of section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and the Securities and Exchange Commission's Rule 10b-5 (17 C.F.R. § 240.10b-5).  Currently before the Court is Defendants' Motion to Compel Plaintiffs to Answer Interrogatories and to Respond to Document Requests.  For the reasons that follow, Defendants' Motion is granted in part and denied in part.

### BACKGROUND[1]

Baxter is a diversified multinational healthcare company. It has three principal divisions: (1) the "Medication Delivery

---

[1]     The facts in this Background section are quoted from Judge Manning's February 3, 2005 Memorandum and Order, NO. 02 C 5608, 2005 WL 331572 (Feb. 3, 2005) denying Defendants' Motion to Dismiss the Amended Complaint.

Division," which sells products used in the intravenous delivery of medication; (2) the "BioSciences Division," which markets pharmaceuticals, vaccines, and blood collection products and services; and (3) the "Renal Division," which offers products used to treat kidney diseases, such as dialysis machines and products.

Plaintiffs consist of two groups: (1) purchasers of Baxter stock on the open-market during the Class Period; and (2) former shareholders of Fusion Medical Technologies ("Fusion") who exchanged their shares of Fusion for stock in Baxter as part of Baxter's acquisition of Fusion on May 3, 2002.[2] Plaintiffs brought this action after Baxter's stock price dropped from $43 to $32 a share on July 18, 2002. This price drop, according to Plaintiffs, was the result of Baxter not meeting analysts' or Baxter's expectations in the second-quarter of 2002. Plaintiffs allege that, during the Class Period, Defendants made numerous misstatements and omissions about serious problems in Baxter's Renal and Biosciences Divisions. These misstatements, according to Plaintiffs, artificially inflated the share price of Baxter's stock.

### Alleged Misstatements and Omissions of Material Fact

Plaintiffs allege that before and during the Class Period,

---

[2]    To complete its acquisition of Fusion, Baxter exchanged $157 million of its stock to the Fusion shareholders for their Fusion shares.

2

Baxter was facing numerous business and financial problems. One of the most pressing issues, confronting the Renal Division, arose shortly before the Class Period, in October of 2001, when it was discovered that dialysis filters, which Baxter produced and sold, were linked to the deaths of over 50 people. In an attempt to hide this and other problems during the Class Period, Defendants allegedly made the Public Statements to paint a false picture of Baxter's financial condition.

For example, on the first day of the Class Period, November 5, 2001, Baxter issued a press release stating that, after conducting an investigation into the deaths of patients using one of its major dialysis products, Baxter would discontinue the product and take a charge of $100-$150 million. This press release, however, also contained what Baxter termed "our 2002 full-year commitments" ("the Commitments"), which stated that in 2002, it would "meet its 2002 full-year commitments of sales growth in the low-teens, earnings per share in the mid-teens and operational cash flow of at least $500 million." Shortly thereafter, on January 24, 2002, Baxter issued another press release reiterating the Commitments and predicting growth in sales in the BioSciences and Medication Delivery Divisions in the "mid-teens" and "in the high single-digits" in the Renal Division. For the rest of the Class Period, Baxter continued to publicly state that it was "on track to achieve" the Commitments.

3

Despite these rosy predictions, on the last day of the Class Period, Baxter released its actual second quarter 2002 financial results, which Plaintiffs contend revealed Baxter's "true financial condition." Instead of sales growing in the "low-teens," Baxter's sales grew by only 8%, which was $100 million less than predicted in the Commitments. These disappointing numbers were the result of: (1) the Renal Division's sales, which accounted for 25% of Baxter's total sales the previous year, being down 1%; and (2) the BioSciences Division's sales only growing at 7%. These numbers were well off the Commitments, which predicted growth in sales in the BioSciences Division in the "mid-teens" and "in the high single-digits" in the Renal Division. According to Plaintiffs, these results "shocked the market" resulting in an $11 drop in Baxter's stock price ($43 to $32) in one day.

Plaintiffs contend that the Public Statements, which included the Commitments, contained material misstatements and omissions because Defendants failed to disclose that: (1) Baxter was forced to close the plants where the defective dialysis products were manufactured, which left Baxter without any low-cost dialysis products, thereby exposing it to increased competition and the loss of customers and market-share; (2) economic instability in Latin America resulted in a drop in sales in that region; (3) a supply glut in blood-plasma products led to

4

lower prices and revenues for the BioSciences Division, which also experienced manufacturing problems resulting in costs in excess of $10 million; and (4) overall demand for the BioSciences Division's products was waning.

Plaintiffs allege that Defendants knew of the above undisclosed problems and thus "had actual knowledge" that the Public Statements were misleading. In support of this contention, Plaintiffs allege that the Individual Defendants: (1) were top managers who had possession of information which contradicted the Public Statements; and (2) had motivation not to reveal Baxter's actual financial situation so that: (a) Defendants could unload substantial portions of their Baxter stock at prices higher than if Baxter's true financial condition was made public; and (b) Baxter could acquire Fusion in a stock swap at a lower cost. Plaintiffs further allege that: (1) nine of the Individual Defendants sold off substantial portions of their Baxter stock during the Class period; and (2) Baxter's merger (via a stock swap) with Fusion was completed near the end of the Class Period. . . .

Plaintiffs also allege that the Individual Defendants were top managers who had access to information which [sic] contradicted the Public Statements. According to Plaintiffs all Defendants were "hands-on managers" and "were directly involved in the day-to-day operations" at Baxter. As "high-level

managers," Defendants "routinely accessed . . . Baxter's weekly (and even daily) revenue and financial reports via a computer system known internally at Baxter as the 'enterprise system,' which was a management information system developed by J.D. Edwards."

## Procedural History

Plaintiffs filed their Initial Complaint on December 6, 2002. Count I alleged that Baxter and Defendants Kraemer and B. Anderson violated section 11 of the 1933 Act (15 U.S.C. § 77k) by issuing a registration statement with material misstatements and omissions of material facts. Count II alleged that all Defendants violated section 10(b) and Rule 10b-5 by making material misstatements and omissions of facts in Baxter's SEC filings, press releases, and oral statements to the media. Count III alleged that Defendants Kraemer and B. Anderson were "control persons" and, therefore, liable for the alleged misstatements and omissions.

Defendants moved to dismiss on the grounds that: (1) Plaintiffs failed to allege any misstatement or omission of material fact; (2) the alleged misstatements fell under the "safe harbor" provision of the Private Securities Litigation Reform Act ("PSLRA"); (3) the Initial Complaint did not allege sufficient facts to meet the PSLRA's "scienter" requirement for forward-looking statements; and (4) Plaintiffs lack standing.

On July 17, 2003, Judge Manning held that the Public Statements were "forward-looking statements" as defined in the PSLRA (15 U.S.C. 78u-5(i)(1)) and that Plaintiffs "allege[d] sufficient facts to show that Defendants omitted material facts which if disclosed would have significantly altered the accuracy of the 2002 financial commitments, and therefore, have sufficiently alleged that the [Public Statements] were misleading and not made in good faith or with a reasonable basis."  Judge Manning, however, granted the motion to dismiss after finding that the Public Statements were accompanied by sufficient "cautionary language" and therefore, were protected under the first-prong of the safe harbor provision in the PSLRA (15 U.S.C. 78u-5(c)(1)(A)(i)).

On appeal, the Seventh Circuit reversed, holding that Judge Manning had prematurely concluded that the "cautionary language" accompanying the Public Statements gave sufficient warnings.  377 F.3d at 734.  Such a determination should not be decided on a motion to dismiss, the court decided, because Plaintiffs were entitled to discovery to determine if Baxter disclosed the "major risks" it "objectively faced" at the time it issued "the forward-looking statements."  Id. The case was reversed and remanded.

On remand, Plaintiffs filed their Amended Complaint, largely repeating the allegations set forth in the Original Complaint. The only substantive difference between the two complaints is

that Plaintiffs dropped their claim under section 11 of the 1933 Act. Defendants again sought to dismiss Plaintiffs' claims under the "second prong" of the PSLRA's safe harbor provision. Judge Manning denied Defendants' Motion on February 3, 2005.

## Defendants' Contention Interrogatories.

To support their claims that Baxter's 2002 growth projections were "materially false and misleading," Plaintiffs' Amended Complaint quotes anonymous, former Baxter employees, who purportedly provided critical information to Plaintiffs. This inside information enabled Plaintiffs to plead fraud with particularity, as required by Fed. R. Civ. P. 9(b) and the PSLRA.

On April 29, 2005, Defendants served its First Set of Interrogatories[3] and First Requests for Production of Documents. Defendants sought the identities of the individuals who provided the information forming the basis of Plaintiffs' fraud charges, as well as access to investigative reports that Plaintiffs compiled in preparation for this litigation. Plaintiffs served their Responses and Objections on June 3, 2005, refusing to supply the information requested. The parties attempted to resolve their dispute during a Local Rule 37.2 conference call, held on June 13, 2005, to no avail.

---

[3] Defendants served one set of Interrogatories on Lead Plaintiffs James M. and Heidi E. Hill, and one set of Interrogatories on Lead Plaintiff Gary T. Brown.

## DISCUSSION

The parties' dispute centers upon whether: 1) Plaintiffs must identify the confidential sources cited in their Complaint; 2) Plaintiffs must answer interrogatories seeking the basis for their assertions of fraud; and 3) Plaintiffs must produce four investigative reports that Plaintiffs label privileged.

Initially, the Court notes that significant restrictions upon the broad scope of discovery are looked upon unfavorably. *Allendale Mut. Ins. Co. v. Bull Data Sys. Inc.*, 152 F.R.D. 132, 135 (N.D. Ill. 1993). Because the attorney-client privilege and work-product doctrine obscure the search for the truth, both are confined to their narrowest possible limits to minimize the impact upon the discovery process. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)(the scope of the privilege is narrow, because it is in 'derogation of the search for truth'); *Radiant Burners, Inc. v. American Gas Ass'n*, 320 F.2d 314, 319, 323 (7th Cir. 1963). Further, the party seeking to invoke either attorney-client privilege or work-product protection bears the burden of establishing all of that privilege's elements. *White*, 950 F.2d at 430; *Allendale*, 152 F.R.D. at 137.

In addition, the fact that Plaintiffs' lawsuit is based upon the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4(b) (West 2005), impacts the Court's analysis. The enactment of the PSLRA transformed the landscape of

securities fraud litigation. Of particular relevance in the instant case, the PSLRA increased a potential plaintiff's burden for pleading scienter, as well as the degree of particularity required for pleading securities fraud. *Disher v. Citigroup Global Markets, Inc.,* --- F.3d —, No. 04-3073, 2005 WL 1962942, at *2 (7th Cir. Aug. 17, 2005).

Prior to the passage of the PSLRA, plaintiffs seeking to state a claim for securities fraud were required to allege facts giving rise to an inference of fraudulent intent. In addition, Fed.R. Civ. P. 9(b) requires that, whenever a complaint contains allegations of fraud, the circumstances constituting fraud must be stated with particularity.

With the passage of the PSLRA, plaintiffs pleading securities fraud were required to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). "The pleading requirement for state of mind is also more stringent under the PSLRA than under Rule 9(b). While the heightened pleading standard of Rule 9(b) still allows a party to aver generally a defendant's condition of mind, under the PSLRA the complaint must 'state with particularity facts giving rise to a strong inference that the

defendant acted with the required state of mind' with respect to each misleading statement or omission alleged." *Davis v. SPSS, Inc.,* — F. Supp.2d —, No. 04 C 3427, 2005 WL 1126550, at *4 (N.D. Ill. May 10, 2005) quoting 15 U.S.C. § 78u-4(b)(2).

Congress enacted the PSLRA to "curb strike suits, lawsuits started to extract a sizeable settlement from companies that are forced to settle, regardless of the merits of the suit, simply to avoid the potentially bankrupting expense of litigation." *Magyery v. Transamerica Financial Advisors, Inc.,* 315 F.Supp. 2d 954, 957 (N.D. Ind. 2004). With this in mind, the Court turns to the parties' dispute.

## I. Plaintiffs Must Identify the Confidential Sources Cited In The Complaint.

Interrogatories 17, 18, and 19 request that Plaintiffs identify the confidential witnesses quoted in their Complaint. Interrogatory number 20 seeks the identify of all persons with knowledge of the facts alleged in the Complaint. The Court acknowledges that there is no outcome determinative precedent on the issue of whether Plaintiffs must identify these witnesses.

Plaintiffs argue that their list of confidential witnesses constitutes work product, and have cited numerous decisions supporting their argument that the identity of witnesses interviewed by counsel in preparation for litigation should be protected. *See, e.g., Electronic Data Sys. Corp. v. Steingraber*, No. 4:02 CV 225, 2003 WL 21653405, at* 2 (E.D. Tex. July 9, 2003)

11

("Revealing the identity of witnesses interviewed would permit opposing counsel to infer which witnesses counsel considers important, thus, revealing mental impressions and trial strategy."); *BASF Corp. V. Old World Trading Co.*, No. 86 C 5602, 1992 WL 22201, at *4 (N.D. Ill. Jan. 31, 1992) (ruling that defendant had no right to ask plaintiff to identify the names of customers that plaintiff's counsel had interviewed in preparing its consumer fraud complaint); *Board of Ed. Of Evanston Township v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 32 (N.D. Ill. 1984) (protecting the identity of witnesses interviewed by defendants and holding that "to tell plaintifs whom defendants have interviewed, where and when such interviews took place, and whether or not a record was made . . . is to give plaintiffs no more knowledge of substantive relevant facts, but rather to afford them the potential for significant insights into the defense lawyer's preparation of their case (and thus their mental processes.")); *In re Ashworth Sec. Litig.*, 213 F.R.D. 385, 389 (S.D. Cal. 2002) (holding that requiring plaintiffs to respond to defendant's interrogatory asking for the identity of sources "would necessarily reveal counsel's opinions regarding the relative importance of these witnesses, the highlights of their testimony/factual knowledge, and would link any future statements by the witnesses with plaintiff's counsel's legal theories and conclusions as outlines in the complaint."); *In re MTI Tech.*

*Corp. Sec. Litig. II.,* No. SACV 00-0745 DOC (Anx), 2002 WL
32344347, (C.D. Cal. June 13, 2002) (refusing to order plaintiff
to identify confidential witnesses cited in complaint, because
doing so would enable defense counsel to infer "which witnesses
counsel considers important, revealing mental impressions and
trial strategy . . . at the heart of the work product rule.")
Therefore, Plaintiffs argue, they should not be required to
respond to the Interrogatories at issue.

Defendants counter that the most relevant and recent caselaw
concludes that they are entitled to discover the names and
addresses of confidential witnesses quoted in Plaintiffs'
Complaint. *See, e.g., Computer Assocs. Int'l, Inc. v. Quest
Software, Inc.,* No. 02 C 4721, 2003 WL 22159022, at *1 (N.D. Ill.
Sept. 17, 2003) (Judge Moran found that the identity of the
interviewed witnesses is not entitled to work product protection
and must be disclosed); *Miller v. Ventro Corp.,* No. C01-01287,
2004 WL 868202, at *2 (N.D. Cal April 21, 2004)(requiring
disclosure, stating that "[b]ecause Plaintiffs chose to build
their Complaint on a foundation of statements from the twenty-two
CWs, the identities of those individuals are highly relevant and
reasonably calculated to lead to discoverable evidence."); *In re
Aetna Inc. Sec. Lit.,* No. CIV. A. MDL. 1219, 1999 WL 354527 (E.D.
Pa. 1999) (granting defendants' motion to compel responses to
interrogatories seeking the identity of persons described in the

13

complaint, and rejecting plaintiffs' claim that the work product doctrine protected the disclosure of anything more than the general list of 750 individuals with discoverable information); *In re Theragenics Corp. Sec. Lit.*, 205 F.R.D. 631 (N.D. Ga. 2002) (requiring plaintiffs to identify the confidential witnesses described in their complaint, because their identities were not entitled to work product protection and disclosure was consistent with the goals of the PSLRA).

Defendants further note, and the Court agrees, that even Plaintiffs' more recent authorities support Plaintiffs' obligation to, at a minimum, respond to the more general Interrogatory No. 20, and disclose the identify of their 24 fact witnesses. *See Elec. Data Sys. Corp.,* 2003 WL 21653405, at *1 (noting that the defendant listed 59 people with knowledge of the relevant facts); *In Re MTI Tech. Corp.,* 2002 WL 32344347, at *1 (plaintiffs produced a list of 71 employees with discoverable information); and *In re Ashworth*, 213 F.R.D. at 386 (plaintiffs produced a list of 115 employees with discoverable information). Having decided that Plaintiffs must respond to Interrogatory No. 20 and identify the 24 witnesses who may have knowledge of discoverable facts, the issue then becomes whether Plaintiffs must identify the three confidential witnesses quoted in their Complaint. After reviewing the relevant authorities, the Court concludes that Plaintiffs must do so.

Initially, the Court notes that the most persuasive authorities interpreting parties' obligations under Rule 26 conclude that the identity of witnesses interviewed are entitled to little, if any, work product protection. *See, e.g.,* Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2023 (Before and after the amendment to Rule 26, "the courts consistently held that the work product concept furnished no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery.")

In addition, the Court finds that the Plaintiffs' authorities fail to properly account for the fact that Plaintiffs chose to quote these witnesses in their Complaint. The decisions supporting Plaintiffs' position all conclude that the identity of witnesses interviewed by counsel is entitled to work product protection, because the information reveals which evidence counsel deems most critical and reveals the attorney's trial strategy and thought processes. But by quoting these witnesses in the Complaint, counsel has already revealed the evidence that it believed was crucial to its case. Whatever work product protection this information may have once held dissipated once counsel decided to quote these witnesses in the Complaint. Thus,

the names of the confidential witnesses reveals merely a fact –
who made the statement– and does not further reveal counsel's
mental impressions or trial strategy.

Judge Shadur's thoughful analysis in *American Floral*
*Services Inc. v. Florists Transworld Delivery Assoc.*, 107 F.R.D.
258 (N.D. Ill. 1985) is instructive. In *American Floral,* the
plaintiff relied on statements from two of the defendant's
employees to support its claim that the defendants violated
antitrust laws. The defendants sought to compel the plaintiff to
disclose the identities of the two witnesses, but the plaintiff
refused, claiming that the information was protected by the work
product doctrine. *Id.* at 260. The plaintiff noted that it had
already provided the defendants with the names of persons having
knowledge, and that the information was well within the
defendants' knowledge and control. *Id.*

Judge Shadur acknowledged that the question of whether such
information constituted protected work product was far from
clear. *Id.* at 261. The court then distinguished the American
Floral Services defendants' request from a similar request made
in a prior decision, the previously mentioned *Board of Education*
*of Evanston Township High School District No. 202 v. Admiral*
*Heating and Ventilating, Inc.,* 104 F.R.D. 23, 32 (N.D. Ill.
1984), where Judge Shadur had recently found that the identity of
witnesses interviewed by counsel was entitled to work product

protection. Judge Shadur explained that in *Evanston Township,* "to tell plaintiffs whom defendants have interviewed, where and when such interviews took place and whether or not a record was made is to give plaintiffs no more knowledge of substantive relevant facts, but rather to afford them the potential for significant insights into the defense lawyers' preparation of their case." *Id.* at 261.

Conversely, in the *American Floral Services* case, Judge Shadur found that the same type of disclosure would not provide an insight into the opposing counsel's thought processes, because the plaintiff had already revealed the crucial, underlying information:

> No such 'significant insights' are afforded by simply telling [defendant] *who* has assertedly adverse information. Of course [defendant] already knows the nature of [plaintiff's] claim, and the mere identification of persons who know facts bearing on that claim tells [defendant] nothing new about the mental processes of [plaintiff's] lawyers.

*Id.* As such, the identity of the witnesses was not entitled to protection and the court ordered the plaintiff to disclose the information. *Id.* at 261-62.

Similarly, in the case at bar, the Court fails to see what additional insight into Plaintiffs' counsel's thought processes or strategy would be revealed by disclosing the names of the confidential witnesses. The work product doctrine was "not devised to protect all work product in the global sense," but

17

rather only information that truly reveals significant insights into an attorney's mental processes. *American Floral Services, Inc.,* 107 F.R.D. at 262. Therefore, the Court declines to extend such protection to the information Defendants seek.

Plaintiffs persist, arguing that cases such as *American Floral Services* are distinguishable, because they do not intend to call these confidential witnesses at trial. The distinction is important, Plaintiffs argue, because, by declining to call these witnesses at trial, Plaintiffs would not be required to identify the witnesses in the Final Pretrial Order, and, therefore, the revelation of the witnesses' identities is not inevitable.

To the contrary, the fact that Plaintiffs no longer intend to rely upon these witnesses - whose allegations enabled Plaintiffs to comply with the PSLRA - makes the argument for disclosure all the more compelling. It would be patently unfair, and in contravention of the PSLRA's purpose of discouraging strike suits, for Plaintiffs to rely so heavily upon the allegations of confidential witnesses to survive a motion to dismiss, thereby gaining broad access to Defendants' discovery materials, without ever having to disclose the evidence that gave Plaintiff that access in the first place. To allow Plaintiffs to shield the identities of confidential witnesses in this manner would encourage litigants to shape witness

statements, inappropriately exaggerate thin evidence, or even
fabricate evidence to survive a motion to dismiss in the hopes of
unearthing substantial evidence during discovery.

Having concluded that the identities of the confidential
witnesses quoted in the Complaint are not entitled to work
product protection, the fact that Plaintiffs' witness list
contains only 24 names or that the witnesses consist primarily of
Defendants' current or former employees is irrelevant.
Therefore, the Court grants Defendants' Motion to Compel
Plaintiffs to Answer Interrogatories 17, 18, 19, and 20.

### III. Plaintiffs Must Answer Defendants' Contention Interrogatory Nos. 1-15

In Interrogatory Nos. 1-15, Defendants ask Plaintiffs to
"[s]tate all facts that form the basis" for each of the fraud
allegations contained in the Complaint.  Plaintiffs argue that
these contention interrogatories are duplicative and premature,
noting that "considerations of judicial economy and party
convenience frequently dictate that answers to contention
interrogatories be delayed until the end of discovery." Pl.'s
Resp. at p.9 *quoting Edward Lower Indus. V. Oil-Dri Corp. of Am.*
No. 94 C 7568, 1995 U.S. Dist. LEXIS 9347, at *10 (N.D. Ill. July
3, 1995). While the Court acknowledges this general proposition,
considerations weightier than judicial economy and party
convenience are at play in this case.

As this Court has previously stated, the phrase "'contention

interrogatory' is used imprecisely to refer to many different kinds of questions." *Thomas & Betts Corp. v. Panduit Corp.,* No. 93 C 4017, 1996 WL 169389. at *2 (N.D. Ill. April 9, 1996) quoting *In re Convergent Technologies Sec. Litig.,* 108 F.R.D. 328, 332 (N.D. Cal. 1985). Contention interrogatories require the answering party to commit to a position and give factual specifics supporting its claims: some interrogatories ask whether the opposing party is making a specified contention; some request that the opposing party state all facts or evidence upon which it bases some specific contention; others ask a party to take a position and apply law and facts in defense of that position; and some request an explanation or the theory behind some specified contention. *Id; Fisher and Porter Co. v. Tolson,* 143 F.R.D. 93, 95-96 (E.D. Pa. 1992).

Regardless of the type of contention interrogatory posed, the general policy is to defer such interrogatories until discovery is near an end. However, courts have the discretion to allow use of contention interrogatories before discovery is complete. *Rusty Jones, Inc. v. Beatrice Co.,* No. 89 C 7381, 1990 WL 139145 (N.D. Ill. Sept. 14, 1990); *In re Arlington Heights Funds Consol. Pretrial,* No. 89 C 701, 1989 WL 81965 (N.D. Ill. July 11, 1989) (generalizations about proper timing of contention interrogatories cannot substitute for specific analysis of their propriety on a case by case basis).

Plaintiffs cite to two of this Court's previous decisions, *Thomas & Betts Corp. v. Panduit, NO. 93 C 4017,* 1996 WL 169389 (N.D. Ill. April 9, 1996) and *Ziemack v. Centel,* No. 92 C 3551, 1995 WL 729295 (N.D. Ill. Dec. 7, 1995), along with additional authorities, in support of their argument that Defendants' contention interrogatories are inappropriate at this early stage of discovery. The Court notes that, in both of its previous decisions, the objecting parties were ordered to answer the interrogatories. *Thomas & Betts,* 1996 WL 169389, at *2 (finding the contention interrogatories timely, and noting that "the Court is quite interested in narrowing the issues and finding out exactly what T&B actually contends."); *Ziemack,* 1995 WL 729295 (compelling answers to some but not all contention interrogatories based upon considerations of fairness). The Court reaches the same result in the instant case.

In this case, Plaintiffs have charged Defendants with fraud under the PSLRA. Their case is largely based upon statements made by individuals whom Plaintiffs have, thus far, refused to identify, and now Plaintiffs claim that they have no intention of calling these witnesses at trial. Despite the early stage of discovery, the Court finds that compelling Plaintiffs to explain the basis for their claims of fraud under the PSLRA "will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early

21

settlement discussion." *Edward Lowe Indus., Inc. v. Oil-Dri Corp. of America,* No. 94 C 7568,1995 WL 399712, at *3 (N.D. Ill. July 7, 1995) (quoting *Fischer & Porter Co.,* 143 F.R.D. at 96.)

Requiring Plaintiffs to identify the evidence supporting their claims of fraud will further the purposes of the PSLRA. As the court in In re Theregenics Corp. stated:

> The [PSLRA] was passed in an effort to curtail the filing of so-called strike suits. *In re Aetna,* 1999 WL 354527 at *4. Congress imposed more stringent pleading requirements on plaintiffs in securities fraud cases. One such requirement imposed upon plaintiffs the burden of identifying the sources for allegations pled on information and belief. 15 U.S.C.A. § 78u-4(b)(1). Disclosing the names of those interviewed by the Plaintiff reinforces this policy.

205 F.R.D. at 636 (noting, however, that the PSLRA has not "Expressly or impliedly changed the rules governing work product.")

In this case, the Court finds that the responses to Interrogatory Nos. 1-15 will reveal the extent to which Plaintiffs' confidential witness statements are bolstered by other evidence. This revelation, combined with the disclosure of the identities of the confidential witnesses, will contribute meaningfully to clarifying the issues in this case and perhaps encourage the parties to engage in early settlement discussions. Therefore, the Court directs Plaintiffs to respond to Interrogatory Nos. 1-15.

**III.  Defendants Are Not Entitled to Discover Factual Information in the Investigative Memoranda**

Defendants also seek to discover the Investigative Memoranda compiled by Plaintiffs' investigators in preparation for this litigation.  Plaintiffs argue that the materials constitute classic work product, but Defendants counter that their showing of substantial need and undue hardship warrants access to the memoranda.

The work product doctrine protects from disclosure documents and tangible things otherwise discoverable that were "prepared in anticipation of litigation or for trial by or for another party or by that party's representative."  Fed. R. Civ. P. 26(b)(3), *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976 (7th Cir. 1996).  It exists so that one party does not gain an unfair advantage over another party by learning the other party's counsel's strategies and legal theories.  *Minnesota School Boards Ass'n Ins. Trust v. Employers Ins. Co. of Wausau,* 183 F.R.D. 627, 630 (N.D. Ill. 1999). In evaluating documents prepared prior to the filing of the lawsuit, the "prospect of litigation" must be identifiable because of specific claims that have already arisen. *Panter v. Marshall Field & Co.,* 80 F.R.D. 718, 725 n. 6 (N.D. Ill. 1978).

A party may overcome an assertion of the work product privilege "only upon a showing that the party seeking discovery has substantial need of the materials in preparation of the

23

party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). While factual information contained in work product is generally discoverable upon a showing of substantial need and undue hardship, courts give greater protection to attorney opinions, which include mental impressions, conclusions, or legal theories concerning the prospective litigation. *Logan,* 96 F.3d at 976, n. 4. A party refusing to disclose information based upon a claim of privilege bears the burden of establishing that the privilege applies. *In re Grand Jury Proceedings,* 220 F.3d 568, 571 (7th Cir. 2000).

In this case, Defendants do not seriously challenge Plaintiffs' ability to categorize the investigative reports as work product; the reports were clearly prepared in anticipation of litigation, by an agent of Plaintiffs' attorneys for their viewing. The issue then becomes whether the factual information contained in those reports is discoverable.

Defendants, not surprisingly, argue that the information should be disclosed, requesting that the Court redact any sections of the report revealing attorney thought processes, opinions, strategy, etc. Defendants claim that they have readily satisfied the substantial need/undue hardship hurdle, because Plaintiffs admit that they based their Complaint on no other non-public information, and because Plaintiffs have refused to

24

identify their confidential witnesses, as well as persons with information. Having ordered Plaintiffs to identify their confidential witnesses and the individuals with information, Defendants' substantial need/undue hardship argument crumbles. Defendants will be supplied with the names of the individuals having knowledge, as well as the identities of the confidential witnesses. The Court foresees no great obstacles in Defendants' ability to interview these witnesses and extract the necessary information.

Indeed, ordering Plaintiffs to disclose the investigative reports under these circumstances amounts to nothing more than allowing Defendants to "take a free ride on the research and thinking of his opponent's lawyer," *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999), which is precisely what the work product doctrine seeks to avoid. Therefore, Defendants' Motion to Compel the disclosure of Plaintiffs' Investigative Reports is denied.

## CONCLUSION

Plaintiffs satisfied the PSLRA's high pleading standards by relying upon statements made by confidential witnesses. Because the identity of these witnesses is not entitled to work product protection, and because it would be inappropriate to permit Plaintiffs to rely upon these witnesses and yet refuse to identify them, the Court grants Defendants' Motion to Compel Plaintiffs to Answer Interrogatory Nos. 17, 18, 19, and 20. In addition, while judicial economy sometimes counsels against requiring parties to answer contention interrogatories early in discovery, the circumstances of this case warrant ordering a response. Finally, in light of the previous conclusions, Defendants cannot establish the substantial hardship and undue burden necessary to obtain the facts contained in Plaintiffs' investigative reports, which are covered by the work product doctrine.

Therefore, Defendants' Motion to Compel is Granted with respect to Interrogatory Nos. 1-20, but denied with respect to Plaintiffs' Investigative Memoranda.

DATED: September 9, 2005          E N T E R E D:

_Arlander Keys_
Arlander Keys
United States Magistrate Judge

26