UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN ASHER, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) No. 02 CV 5608 |
| v. | ) ) Hon. Blanche M. Manning |
| BAXTER INTERNATIONAL, INC., *et al.* | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Plaintiffs filed this proposed class action on behalf of shareholders who acquired stock in defendant Baxter International, Inc. between November 5, 2001 and July 17, 2002. In the Amended Consolidated Class Action Complaint, plaintiffs allege that Baxter and several of its key executives[1] made materially false or misleading public statements ("the Public Statements")[2] in violation of section 10(b) of the Securities Exchange Act of 1934, *see* 15 U.S.C. § 78j(b), and the Securities and Exchange Commission's Rule 10b-5, *see* 17 C.F.R. § 240.10b-5. Defendants also allege control person liability under section 20(a) of the 1934 Act against Kraemer, B. Anderson, and Beard. The present matter comes before this court on defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the grounds that

---

[1] The key Baxter executives include: (1) Harry M. Jansen Kraemer, Jr., CEO and chairperson of the board of directors; (2) Brian P. Anderson ("B. Anderson"), CFO and senior vice president; (3) Norbert G. Reidel, vice president and chief scientific officer; (4) Karen J. May, vice president of human resources; (5) Eric Beard, vice president and president of European operations; (6) Thomas Sabatino, Jr., senior vice president and general counsel; (7) John Quick, vice president of quality and regulatory; (8) Gregory P. Young, vice president of Baxter Healthcare Corp.; (9) James M. Gatling, vice president of global operations; (10) Timothy B. Anderson ("T. Anderson") senior vice president of corporate strategy and development; and (11) James R. Hurley, vice president of integration management.

[2] The public statements include press releases, oral statements to the media, and SEC filings, which defendants made during the class period.

plaintiffs have failed to adequately plead loss causation, a required element of a securities fraud claim.

## BACKGROUND[3]

Baxter is a diversified multinational healthcare company. It has three principal divisions: (1) the "Medication Delivery Division," which sells products used in the intravenous delivery of medication; (2) the "BioSciences Division," which markets pharmaceuticals, vaccines, and blood collection products and services; and (3) the "Renal Division," which offers products used to treat kidney diseases, such as dialysis machines and products.

Plaintiffs consist of two groups: (1) purchasers of Baxter stock on the open-market during the class period; and (2) former shareholders of Fusion Medical Technologies who exchanged their shares of Fusion for stock in Baxter as part of Baxter's acquisition of Fusion on May 3, 2002. To complete its acquisition of Fusion, Baxter exchanged $157 million of its stock to the Fusion shareholders for their Fusion shares.

The plaintiffs allege that during the class period, the defendants made numerous misstatements and omissions about Baxter's financial situation, including problems in its Renal and Biosciences Divisions. According to the complaint, instead of being honest, the defendants issued optimistic, though unattainable, financial predictions in order to conceal Baxter's problems. Plaintiffs allege that the result was an artificially inflated share price for Baxter stock.

---

[3] The facts are taken from the Complaint, this Court's July 17, 2003, Memorandum and Order, 2003 WL 21825498, granting defendants' motion to dismiss the original complaint and the Seventh Circuit's decision reversing the 2003 order, *Asher v. Baxter*, 377 F.3d 727 (7th Cir. 2004). Because the facts of this case are thoroughly discussed in this court's prior order and the Seventh Circuit's decision, the court will only address the facts as they relate to the issues currently before it.

On July 18, 2002, Baxter reported second-quarter results that did not meet analysts' or Baxter's expectations, and Baxter's stock price dropped from $43 to $32 a share. Plaintiffs contend that the rosy financial commitments defendants made knowing that the commitments were unattainable caused the dramatic price drop when Baxter's true financial picture came to light in July 2002. In turn, the July price drop damaged the plaintiffs by diminishing the value of their Baxter holdings.

**Alleged Misstatements and Omissions of Material Fact**

Plaintiffs allege that before and during the class period, Baxter faced numerous business and financial problems. One of the most pressing issues arose shortly before the class period, in October of 2001, when Baxter-produced dialysis filters were linked to the deaths of over 50 people. In an attempt to hide this and other problems during the class period, defendants allegedly made the public statements concealing Baxter's true predicament.

For example, on the first day of the class period, November 5, 2001, Baxter issued a press release stating that after investigating the deaths, Baxter would discontinue the dialysis product and take a charge of $100-$150 million. This press release, however, also contained what Baxter termed "our 2002 full-year commitments" ("the commitments"), which stated that in 2002, it would "meet its 2002 full-year commitments of sales growth in the low-teens, earnings per share in the mid-teens and operational cash flow of at least $500 million." A short time later, on January 24, 2002, Baxter issued another press release reiterating the commitments and predicting growth in sales in the BioSciences and Medication Delivery Divisions in the "mid-teens" and "in the high single-digits" in the Renal Division. For the rest of the class period, Baxter continued to publicly state that it was "on track to achieve" the commitments.

Despite these rosy predictions, on the last day of the class period, Baxter released its actual second-quarter 2002 financial results, which plaintiffs contend revealed Baxter's "true financial condition." Instead of sales growing in the "low-teens," Baxter's sales grew by only 8%, which was $100 million less than predicted in the commitments. These disappointing numbers were the result of: (1) the Renal Division's sales, which accounted for 25% of Baxter's total sales the previous year, being down 1%; and (2) the BioSciences Division's sales only growing by 7%. These numbers were well off the commitments, which predicted growth in sales in the BioSciences Division in the "mid-teens" and "in the high single-digits" in the Renal Division. According to plaintiffs, these results "shocked the market," resulting in an $11 drop in Baxter's stock price (from $43 to $32) in one day.

Plaintiffs contend that the public statements, which included the sales commitments, contained material misstatements and omissions because defendants failed to disclose that: (1) Baxter was forced to close the plants where the defective dialysis products were manufactured, which left Baxter without any low-cost dialysis products, thereby exposing it to increased competition and the loss of customers and market-share; (2) economic instability in Latin America resulting in a drop in sales in that region; (3) a supply glut in blood-plasma products leading to lower prices and revenues for the BioSciences Division, which also experienced manufacturing problems resulting in costs in excess of $10 million; and (4) decreased overall demand for the BioSciences Division's products.

Plaintiffs allege that defendants knew about these undisclosed problems and thus "had actual knowledge" that the public statements were misleading. In support, plaintiffs point out that the individual defendants: (1) were top managers who had possession of information which

contradicted the public statements; and (2) had a motive not to reveal Baxter's actual financial situation so that: (a) they could unload substantial portions of their Baxter stock at prices higher than if Baxter's true financial condition was made public; and (b) Baxter could acquire Fusion in a stock swap at a lower cost. Plaintiffs further allege that: (1) nine of the individual defendants sold off substantial portions of their Baxter stock during the class period; and (2) Baxter's merger (through a stock swap) with Fusion was completed near the end of the class period.

During the class period, nine of the eleven defendants sold 437,100 shares of Baxter stock, clearing $23,939,516 in total proceeds. As set forth in graphs and charts in the amended complaint, the plaintiffs allege that these sales represent a dramatic increase over the defendants' trading practices during the previous seven years.

Plaintiffs also allege that the individual defendants were top managers who had access to information which contradicted the public statements. According to plaintiffs, all defendants were "hands-on managers" and "were directly involved in the day-to-day operations" at Baxter. As "high-level managers," defendants "routinely accessed . . . Baxter's weekly (and even daily) revenue and financial reports via a computer system known internally at Baxter as the 'enterprise system,' which was a management information system developed by J.D. Edwards."

**Procedural History**

As a result of the above alleged misstatements and omissions and the drop in the share price of Baxter's stock, plaintiffs filed their original complaint on December 6, 2002. Count I alleged that Baxter and defendants Kraemer and B. Anderson violated section 11 of the 1933 Act, *see* 15 U.S.C. § 77k, by issuing a registration statement with material misstatements and omissions of material facts. Count II alleged that all defendants violated section 10(b) and Rule

10b-5 by making material misstatements and omissions of facts in Baxter's SEC filings, press releases, and oral statements to the media. Count III alleged that defendants Kraemer and B. Anderson were "control persons" and therefore were liable for the alleged misstatements and omissions.

In response to the original complaint, defendants moved to dismiss on the grounds that: (I) plaintiffs failed to allege any misstatement or omission of material fact; (II) the alleged misstatements fell under the "safe harbor" provision of the Private Securities Litigation Reform Act ("PSLRA"); (III) the original complaint did not allege sufficient facts to meet the PSLRA's "scienter" requirement for forward-looking statements; and (IV) plaintiffs lacked standing.

In its 2003 order granting the defendants' motion to dismiss, this court held that the public statements were "forward-looking statements" as defined in the PSLRA (15 U.S.C. 78u-5(i)(1)) and that plaintiffs "allege[d] sufficient facts to show that defendants omitted material facts which if disclosed would have significantly altered the accuracy of the 2002 financial commitments, and therefore, have sufficiently alleged that the [Public Statements] were misleading and not made in good faith or with a reasonable basis." The court, however, granted the motion to dismiss after finding that the public statements were accompanied by sufficient "cautionary language" and therefore, were protected under the first-prong of the safe harbor provision in the PSLRA (15 U.S.C. 78u-5(c)(1)(A)(i)).

On appeal, the Seventh Circuit agreed with this court's conclusion that the public statements were forward-looking as defined in the PSLRA. *Asher v. Baxter Int'l. Corp.*, 377 F.3d 727, 728 (7th Cir. 2004). The Seventh Circuit, however, held that this court prematurely concluded that the "cautionary language" accompanying the public statements gave sufficient

warnings. *Id.* at 734. Such a determination should not be decided on a motion to dismiss because plaintiffs were entitled to discovery to determine if Baxter disclosed the "major risks" it "objectively faced" at the time it issued "the forward-looking statements." *Id.* Accordingly, the appellate court reversed and remanded.

On remand, plaintiffs filed an amended complaint alleging the same conduct set forth in the original complaint. The only substantive difference between the two complaints is that plaintiffs have now dropped their claim under section 11 of the 1933 Act. Defendants then moved to dismiss the amended complaint under the "second prong" of the PSLRA's safe harbor provision. This court denied the motion after concluding that the plaintiffs' complaint raised a reasonable and strong inference that defendants had "actual knowledge" that the public statements were misleading. Defendants now seek judgment on the pleadings based on plaintiffs' alleged failure to adequately plead loss causation.

## ANALYSIS

The standard for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) mirrors the familiar standard under Rule 12(b)(6) for a motion to dismiss. Thus, judgment on the pleadings is appropriate only when, accepting the facts in the complaint as true and viewing them in the light most favorable to the plaintiff, it is clear that the plaintiff can prove no set of facts that would entitle him to relief. *See Guise v. BWM Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004). Defendants argue that they are entitled to judgment on the pleadings because the plaintiffs have failed to allege loss causation.

Under the PSLRA, the plaintiffs bear "the burden of proving that the act or omission of the defendant alleged to violate this title caused the loss for which the plaintiff seeks to recover

7

damages." 15 U.S.C. § 78u-4(b)(4). As the Supreme Court recently explained in *Dura Pharmaceuticals, Inc. v. Broudo*, this provision "makes clear Congress' intent to permit private securities fraud actions for recovery where, but only where, plaintiffs adequately allege and prove the traditional elements of causation and loss,"—i.e., the plaintiffs must demonstrate a "causal connection between the material misrepresentation and the loss." *Dura Pharm. Inc. v. Broudo*, 125 S. Ct. 1627, 1631, 1633 (2005). Defendants claim that *Dura Pharmaceuticals* and its progeny make clear that plaintiffs have not and could not adequately allege that defendants' purported misrepresentations and omissions caused the drop in Baxter's stock price for which plaintiffs seek to recover.

In *Dura*, the Supreme Court rejected the Ninth Circuit's holding that the plaintiffs adequately pleaded loss causation by alleging that they purchased stock at an artificially inflated stock on account of the defendants' misrepresentations. *Id.* at 1630. Specifically, the plaintiffs in *Dura* alleged that the defendants falsely claimed that a new spray device for treating asthma was going to receive FDA approval. *Id.* at 1630. Dura eventually announced that the FDA would not approve the spray device, after which the share price fell. *Id.*

The Supreme Court held that the plaintiffs' complaint failed to plead loss causation because it alleged only that the plaintiffs were damaged by the inflated price they paid at the time they bought their shares, rather than by the drop in price the shares endured after the company's announcement about FDA approval. *Id.* at 1632. As the Court explained, "[t]he complaint's failure to claim that Dura's share price fell significantly after the truth became known suggests that the plaintiffs considered the allegation of purchase price alone sufficient. . . . [H]owever, the 'artificially inflated purchase price' is not itself a relevant economic loss. And the complaint

8

nowhere else provides the defendants with notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation concerning Dura's 'spray device.'" *Id.* at 1634.

Relying on *Dura* and several opinions issued in its wake, defendants maintain that plaintiffs have failed to plead loss causation. They argue that *Dura* makes clear that plaintiffs must plead and prove that the fraud or misrepresentations were revealed to the market and the share price declined in response. According to defendants, because the disappointing second-quarter results did not disclose any scheme to conceal Baxter's true financial picture through misrepresentations and omissions, the decline in the value of plaintiffs' shares cannot have been caused by Baxter's alleged misrepresentations and omissions.

To support their argument, defendants point to several district court cases interpreting *Dura*. In *In re Initial Public Offering Securities Litigation*, a court in the Southern District of New York rejected the plaintiffs' allegations of loss causation based on the defendants' purported scheme to discount earnings estimates and issue cautionary statements that would then excite the market when the estimates were beaten. *In re Initial Pub. Offering Secs. Lit.*, Nos. MDL 1554(SAS), 21 MC 92(SAS) & 04 Civ. 3757(SAS), 2005 WL 1162445, at *3 (S.D.N.Y. May 13, 2005). The plaintiffs alleged that the scheme was disclosed when the defendant failed to meet earnings forecasts or issued a statement foreshadowing such a failure. *Id.* at *3. The district court, however, concluded that the failure to meet earnings forecasts had a "*negative* effect on stock prices, but not a *corrective* effect." *Id.* The court further explained, "Such a failure does not imply that defendants concealed a scheme to depress earnings estimates and drive up prices.

9

It does not disclose the scheme; therefore, it cannot correct the artificial inflation caused by the scheme." *Id.* The court thus determined that the plaintiffs had failed to plead loss causation.

The other cases cited by defendants reach similar conclusions. In *D.E. & J. Limited Partnership v. Conaway*, an unpublished opinion from the Sixth Circuit, the panel rejected the plaintiffs' allegations of loss causation based on Kmart's bankruptcy announcement. *D.E. & J. Ltd. P'ship v. Conaway*, Nos. 03-2334 & 03-2417, 133 Fed. Appx. 994 (6th Cir. June 10, 2005) (unpublished order). The court based its conclusion on the fact that the plaintiffs had only alleged that they paid artificially inflated prices, and had failed to claim that Kmart's bankruptcy announcement disclosed any prior misrepresentation to the market. *Id.* at 1000. The Sixth Circuit thus concluded that, like the complaint in *Dura*, the plaintiffs "did not plead that the alleged fraud became known to the market on any particular day . . . and did not connect the alleged fraud with the ultimate disclosure and loss." *Id.* at 1000-01. In short, the plaintiffs, like the plaintiffs in *Dura*, had simply alleged that they "'paid artificially inflated prices for Kmart" and would not have purchased Kmart securities "at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.'" *Id.* At 1001 (quoting plaintiffs' complaint).

In another of defendants' cited cases, *In re Cree, Inc. Securities Litigation*, a district court in the Middle District of North Carolina rejected plaintiffs' allegations of loss causation where there was no direct relationship between the alleged misrepresentations and the plaintiffs' losses. *In re Cree, Inc. Sec. Lit.*, No. 1:03CV00549, 2005 WL 187004, (M.D.N.C. Aug. 2, 2005). In *Cree*, the plaintiffs alleged that the defendants had engaged in a series of fraudulent corporate transactions, some of which were fraudulent round-trip transactions with its own funds and

10

others pursuant to a fraudulent "channel stuffing" scheme. *Id.* at *2. The co-founder and former CEO of the company later filed suit against it, and the day after the suit was filed, the company's stock price dropped 18.5%. *Id.* at *12. The court rejected the plaintiffs' argument that their complaint adequately pleaded loss causation based on the filing of the lawsuit. The court held that in order to properly plead loss causation, the plaintiffs must "show that a disclosure of fraud in those transactions occurred, and that upon such disclosure the price of Cree's stock dropped, resulting in plaintiffs' economic loss." *Id.* At 12. Because the allegedly fraudulent transactions had been fully disclosed in SEC filings, the filing of the lawsuit did not amount to a disclosure of fraud—although the motives for entering into the transactions were "cast in a negative light, it cannot be said that a new disclosure occurs such that a resulting loss in share price is caused by the transaction. The loss is caused by the subsequent characterization of the transaction, and the transaction cannot be the proximate cause of the complained of loss." *Id.* at 12.

Finally, defendants point to *In re Tellium, Inc. Securities Litigation*, No. Civ.A. 02CV5878FLW, 2005 WL 2090254 (D. N.J. Aug. 26, 2005). The district court in *Tellium* reaffirmed its earlier opinion dismissing certain counts of the plaintiffs' complaint because they had failed to satisfy *Dura's* loss causation requirement. The plaintiffs in *Tellium* had alleged that the defendant went public based on false contractual commitments and sales expectations, and that after the IPO the defendants continued to make false statements about projected revenues. *Id.* at 3. In their motion to reconsider, the plaintiffs argued that Tellium had made a "curative disclosure" when it announced in a conference call with analysts that Tellium needed a new customer in order to achieve its $288 million revenue guidance. *Id.* at *2-3. The court, however, rejected this theory, reasoning that the concession about needing a new customer "neither

11

revealed the alleged illusoriness and unenforceablility of Tellium's three contracts, nor exposed that the $288 million revenue projections were not based upon real contractual commitments." *Id.* at 3. The court interpreted *Dura* to hold that "loss causation is not pled upon allegations of drops in stock price following an announcement of bad news that does not disclose the fraud." *Id.* at 4.

Based on these cases, defendants argue that plaintiffs have failed to adequately plead loss causation because the July 18, 2002 release of Baxter's second-quarter financial results did not reveal Baxter's alleged fraud. Plaintiffs respond that they have adequately pleaded loss causation by alleging that "Baxter's stock price fell in reaction to revelation of its true financial condition—namely, figures that demonstrated to the market that the Company would not meet its rosy projections."

Although it is a close question, this court concludes that, at this stage of the pleadings, plaintiffs have adequately alleged loss causation. Unlike the plaintiffs in *Dura* who alleged only that they paid artificially inflated prices, plaintiffs here allege that their loss was indeed caused by Baxter's announcement of its second-quarter results, which revealed the dire financial situation that the defendants had tried to conceal. Although defendants attempt to characterize this drop as nothing more than the market's reaction to bad news, a liberal reading of plaintiffs' complaint reveals more. Plaintiffs are essentially alleging not just that the price dropped as the result of bad financial news, but rather as the result of the unattainable rosy "financial commitments" issued by Baxter––commitments the company could not possibly have met given its internal state of affairs. In other words, plaintiffs are claiming that the startling disconnect between Baxter's

12

predictions and its actual second-quarter results revealed to the market that the predictions had been unattainable.

Unlike the allegations in *Dura*, which the Court concluded failed to "provide[] the defendants with notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation concerning Dura's 'spray device,'" *Dura* 125 S. Ct. at 1634, plaintiffs here have given Baxter notice of the relevant economic loss and the causal connection between that loss and Baxter's misrepresentations and omissions. *Dura* emphasized that "ordinary pleading rules are not meant to impose a great burden upon a plaintiff" and that a plaintiff need only "provide a defendant with some indication of the loss and the causal connection the plaintiff has in mind." *Id.* As explained above, plaintiffs have satisfied this standard with their allegations that Baxter purposefully lied about the company's ability for growth and concealed information that would have revealed that Baxter's "commitments" were false. The later announcement of the shortfall in Baxter's second-quarter earnings thus caused the share price to fall, because the shortfall alerted the market to the fact that Baxter's rosy predictions had not been true.

In sum, at this stage of the litigation plaintiffs have sufficiently alleged that they were "in fact injured by the misstatement or omission of which [they] complain." *See Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 649 (7th Cir. 1997). If Baxter had not lied about its internal state of affairs and its ability for growth, the disappointing second-quarter results would not have had such a negative impact on the share price. Thus, the alleged lies were responsible for the price drop following the July 18, 2002 second-quarter earnings announcement, and plaintiffs have satisfied their burden of pleading loss causation at this stage of the litigation.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings [111-1] is DENIED.


ENTER:

DATE: February 7, 2006

*Blanche M. Manning*
Blanche M. Manning
United States District Judge