IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN ASHER, et al. ) | |
| ) | Case No. 02 C 5608 |
| Plaintiffs, ) | |
| v. ) | Hon. Blanche M. Manning |
| ) | |
| BAXTER INTERNATIONAL, INC., ) | Magistrate Judge Arlander Keys |
| et al. ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

In this class action lawsuit, the Plaintiffs - who all bought stock in Baxter International, Inc. between November 5, 2001 and July 17, 2002 - allege that the company and several of its top executives made materially false or misleading public statements in violation of section 10(b) of the Securities Exchange Act of 1934 and in violation of Securities Exchange Commission Rule 10b-5. The case is before the Court on Defendant's motion for protective order, which was triggered by the plaintiffs' third request for production of documents.

In that request, the Plaintiffs sought

> [a]ll documents concerning, referring to, or discussing Baxter's backlog of orders, sales journals, shipping logs, or other documents regarding timing, recognition, and reporting of sales, earnings, and other financial figures, by business segment [and in the aggregate], during the Relevant Time Period, including, but not limited to, all correspondence made by electronic mail; all intra-office memoranda; any communications or presentation materials provided to the Board; all notes, scripts, transcripts, audio tapes, video tapes, analyses, or other documents prepared as a result of or in connection with any meeting or conference call concerning Baxter's backlog of orders, sales journals, shipping logs, or the timing, recognition, and

reporting of sales, earnings, and other financial figures; and all monthly, quarterly, or annual reports.

Plaintiffs' Third Request for Production of Documents, Request Numbers 1 and 2, pp. 6-7 (attached as Exhibit F to Defendants' Motion for a Protective Order). Plaintiffs also sought "[a]ll documents concerning, referring to, or discussing the effect of Baxter's backlog of orders, sales journals, shipping logs, or other documents regarding the timing, recognition, and reporting of sales, earnings, and other financial figures, on the Company's quarterly or annual financial performance, financial condition, financial statements, revenues, income, profits, losses, or sales. Id., Request Number 3, p. 7. For purposes of all three document requests included in the Third Request for Production of Documents, the Plaintiffs defined the "relevant time period" as "the period from January 1, 2001 through May 1, 2004." Id., p. 6. This is considerably broader than the definition of "relevant time period" used in the Plaintiffs' earlier requests for production of documents, which sought documents created during the period from August 1, 2001 through September 1, 2002. See Plaintiffs' First Request for Production of Documents, p.6 (attached as Exhibit E to Defendants' Motion for a Protective Order).

Baxter objected to the requests, and the parties endeavored to resolve their dispute concerning the requested discovery. In a letter dated June 12, 2006, Baxter explained that it objected

to the requests because the allegations of the complaint were limited to the period ending July 17, 2002; yet the requests sought documents during the period from January 1, 2001 through May 1, 2004. See June 12, 2006 Letter from Matthew Kipp to Marcus Bozeman (attached as Exhibit I to Defendant's Motion for Protective Order). Nevertheless, to resolve the issue, Baxter offered to "produce documents sufficient to show Baxter's full-year 2002 financial results and those results as restated in July 2004." Id.

In response, Plaintiffs defended their requests, explaining that the discovery was directed toward Defendants' disputed assertion that Baxter, in effect, met its financial projections for the full year 2002, and is designed to elicit materials that might show the Company can make this contested claim only because it 'borrowed' from its 2003 output." See June 20, 2006 Letter from Marcus Bozeman to Matthew Kipp (attached as Exhibit J to Defendant's Motion for Protective Order). Plaintiffs explained that they were "particularly interested in items tracking such things as Baxter's aggregate 'backlog of orders' through March 2003." Id.

To further the resolution of the dispute, Baxter undertook to confirm whether such items were available. Id. Ultimately, Baxter informed Plaintiffs that "aggregate data on sales backlogs or 'items tracking such things as Baxter's aggregate "backlog of

3

order[s]"' does not exist at the Company" and that "[t]he Company does not maintain in the regular course of business any data tracking sales or inventory backlogs on a company-wide, or even divisional, basis." See June 28, 2006 Letter from Matthew Kipp to Marcus Bozeman (Ex. K to Def's Motion for Protective Order).

In response, Plaintiffs expressed shock that Baxter did not maintain such files, and demanded "other responsive documents which would indicate the size of any backlog," including: documents which reflect monthly inventory levels for June by product lines; agings of receivables for October through June; right of return of inventory sold in the fourth quarter; financing terms for shipments in December; the amounts of consignment inventory; documents reflecting the amount of accounts receivable in the fourth quarter of 2002; documents demonstrating the volume of shipments in the fourth quarter of 2002 as compared to shipments in the third quarter of that year and the first quarter of 2003; shipping logs for the last twenty days of 2002 and the first twenty days of 2003; any document reflective of invoice dating programs to extent payment terms beyond normal dating; documents revealing discounts or free goods for large shipments in the fourth quarter; and credit memoranda issued during January and February of 2003. See July 5, 2006 Letter from Marcus Bozeman to Matthew Kipp (attached as Exhibit L to Defendant's Motion for Protective Order).

4

Baxter responded that, given the way the company operates - on a decentralized basis, locally managing its product lines in over 100 countries - it should not be shocking that it does not maintain aggregate data on sales backlogs. More to the point, Baxter responded, the documents requested were "not reasonably calculated to lead to the discovery of admissible evidence and impose an undue burden on the Company, given that the Complaint does not contain any allegations regarding the accuracy or integrity of Baxter's financial reports, much less those reports subsequent to July 17, 2002." See July 18, 2006 Letter from Matthew Kipp to Marcus Bozeman (attached as Exhibit M to Defendant's Motion for Protective Order). Based upon this, Baxter stood on its objections and refused to produce the documents requested in Mr. Bozeman's July 5th letter.

Shortly thereafter, on September 5, 2006, the Plaintiffs served a notice of a 30(b)(6) deposition, seeking the witness who would be most competent to testify concerning any search Baxter may have conducted for documents responsive to the Plaintiffs' third request for production of documents. In response, Baxter filed a motion for a protective order, seeking to quash the 30(b)(6) notice and the related document requests. While that motion was being briefed, Baxter offered to produce "information relating to Baxter's sales performance for each quarter in 2002 and 2003"; in particular, Baxter agreed to produce, to the extent

5

available, "information relating to (I) the calculation of net sales, (ii) inventory turns, (iii) sales returns, and (iv) days' sales outstanding." See June 28, 2007 email from Matthew Kipp to Marcus Bozeman (attached as Exhibit 1 to Defendants' Reply in Support of their Motion for a Protective Order). Presumably, the plaintiffs declined this offer.

Generally speaking, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things, and the identify and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Discovery is broadly permitted, though not as broadly permitted as it once was; in 2000, Rule 26(b)(1) was amended to narrow the scope of information presumptively discoverable from that which was "relevant to the subject matter of the case" to that which is "relevant to a claim or defense." In so amending the rule, the Advisory Committee "signal[ed] to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signal[ed] to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." See Advisory Committee Notes, 2000 Amendments to Rule 26, Subdivision (b)(1).

Rule 26 also provides that, "for good cause shown" the Court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (1) that the disclosure or discovery not be had;
>
> (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
>
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>
> (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters; . . . .

Fed. R. Civ. P. 26(c). Establishing "good cause" requires "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Silva v. Fortis Benefits Insurance Co.*, 437 F.Supp.2d 819, 827 (N.D. Ill. 2006).

Here, Baxter argues that the plaintiffs' discovery requests are irrelevant to any claim or defense asserted. In their most recent complaint, the plaintiffs allege that Baxter made "materially false and misleading statements" in violation of the securities laws – namely, the plaintiffs fault Baxter for making statements or "financial commitments" that Baxter would achieve 2002 full year sales growth in the low-teens (at current foreign exchange rates), full-year 2002 earnings-per-share growth in the mid-teens, and operational cash flow of at least $500 million, all despite the knowledge that the internal company picture was

7

not nearly so rosy. The plaintiffs allege that, when the truth emerged on July 18, 2002, with Baxter's report of its second quarter 2002 results, the price of Baxter common stock plummeted from $43.41 per share to $32 per share. The class consists of shareholders who acquired stock in Baxter between November 5, 2001, and July 17, 2002.

Baxter admits that it made the "commitments" alleged; it admits that it committed to 2002 full year sales growth in the low teens, earnings-per-share in the mid teens and operational cash flow of at least $500 million. See, e.g., Answer, ¶¶39-41. But, Baxter has maintained throughout these proceedings that it never issued quarterly projections (it issued projections for the full year 2002 only), which means there's no basis for plaintiffs to assert a fraud claim based upon the company's alleged failure to achieve projected results in the second quarter of 2002. See Answer, p. 44 (First Affirmative Defense). Baxter also claims that, because it substantially achieved its full-year 2002 projected results, plaintiffs have no basis to claim securities fraud. See Answer, p. 44 (Second Affirmative Defense).

The Plaintiffs argue that, because of these affirmative defenses, they are entitled "to obtain discovery that might substantiate their belief that Defendants are able to declare that Baxter 'met' its projections for the full year 2002 only by 'borrowing' numbers which should have been reported in 2003."

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for a Protective Order, p. 3. To support their position, they cite some language from a prior Seventh Circuit decision, issued after the district court dismissed the case on the pleadings. The district court determined that Baxter's statements fell within the PSLRA's safe harbor provision, and, accordingly, dismissed the complaint for failure to state a claim upon which relief could be granted. The Seventh Circuit reversed and remanded, finding that the complaint had "raise[d] the possibility . . . that Baxter omitted important variables from the cautionary language and so made projections more certain than its internal estimates at the time warranted." *Asher v. Baxter*, 377 F.3d 727, 734-35 (7th Cir. 2004). Significantly, the court did not say that the statements necessarily fell outside the safe harbor provision; on the contrary, the court acknowledged that, in the end, that provision may carry the day; the court held simply that it was too soon to tell whether the complaint could state a claim for which relief could be granted under the Securities laws. The court said the same about Baxter's contention that its full-year 2002 projections panned out, erasing any basis for a securities fraud claim:

> Baxter insists that all of the projections dealt with the entire calendar year 2002, and that by year-end performance was up to snuff-close enough to the projections that any difference was immaterial. Once again, it is inappropriate to entertain such an argument at the pleading stage. The district court

9

will need to determine whether all of the forward-looking statements referenced calendar 2002 as a whole, rather than anticipated improvements quarter-by-quarter over the preceding year. It will be necessary to evaluate whether differences between the projections and the outcome were material under the standard of *Basic*. Finally it may be necessary to explore what Baxter's full-year results actually were; plaintiffs' reply brief accuses Baxter of using gimmicks to report extra revenue in 2002 at the expense of later years. The implication is that Baxter may have overstated its 2002 results. Whether that is so cannot be determined on the pleadings, even when supplemented with the documents that Baxter has filed with the SEC.

*Id.*, at 735.

The Plaintiffs read this language to open the door to the discovery they seek via their third request for production of documents and via their 30(b)(6) subpoena. But, at best, Baxter's affirmative defenses and the resulting arguments (not yet folded into any formal allegation) concerning the full year 2002 numbers, would allow the Plaintiffs to explore the validity of the full year 2002 numbers; they would not make relevant the broad array of documents requested for the broad period extending from January 2001 through May 2004.

In fact, in their opposition to Baxter's motion for a protective order, the Plaintiffs take issue with Baxter's claim of "no harm, no foul", based upon their achievement of the full-year 2002 projections; they argue that the "projections Baxter claims to have 'met' were not finalized until September 2002, months after the close of the class period"; thus "no class member could have relied on those predictions when purchasing

10

Baxter stock, and the fact that the Company claims to have come close to satisfying those goals does nothing to weaken Plaintiffs' contention." Response, pp. 2-3. This is essentially an admission that the documents sought are irrelevant to the claims alleged in the complaint.

If what the Plaintiffs want is to test the notion that Baxter actually met its full year projections, the discovery Baxter offered to produce to resolve this dispute would seem to provide exactly what the Plaintiffs say they need. Recognizing that relevance for purposes of discovery is broader than relevance for purpose of admission at trial, *see, e.g., Williams v. City of Chicago*, No. 06 C 1243, 2007 WL 2713363, at *1 (N.D. Ill. Sept. 12, 2007)(citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 350 (1978)), the Court will order Baxter to produce these categories of documents for each quarter of 2002 and 2003, to the extent they exist. At this time, that is all the Court will order. The remainder of what the Plaintiffs seek is simply not relevant to any claim or defense asserted to date in this lawsuit. So too the discovery sought in the 30(b)(6) deposition notice served by the Plaintiffs on August 16, 2006.

## Conclusion

For the reasons explained above, the Court grants in part Baxter's motion for protective order [#162]. Baxter is ordered to produce the documents identified in Exhibit 1 to its reply brief, but it is not required to produce any additional discovery at this time. The 30(b)(6) deposition is quashed.

DATED: October 25, 2007     E N T E R E D:

*Arlander Keys*
Arlander Keys
United States Magistrate Judge